

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-06-00234-CR
_____

MICHAEL JAMES MARTIN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 402nd Judicial District Court
Wood County, Texas
Trial Court No. 19,347-2006

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

OPINION

On March 24, 2004, as required and as he had done each year since 2000, Michael James Martin, a sex offender,[1] reported to the Wood County Sheriff's Department to fulfill his annual verification requirement. He was given what was labeled a "Sex Offender Update Form." Martin was asked if anything had changed from the previous year. The staff member who dealt with Martin that day testified that Martin indicated there had been no changes, so she left blank the middle part of the 2004 form, including information about Martin's employment, and directed Martin to sign the form in that condition.

In April 2006, Martin was indicted for, on or about March 24, 2004, "intentionally, knowingly and recklessly fail[ing] to verify the information in the registration form received by the Wood County Sheriff's Department as complete and accurate, to-wit: failing to report a change of employment." *See* TEX. CODE CRIM. PROC. ANN. art. 62.10.[2] The jury found Martin guilty, the trial court sentenced him to ten years' confinement, and this appeal followed.[3]

_____

[1]After being on deferred adjudication community supervision and later having been found to have violated the terms of that community supervision, in 1998, Martin was adjudicated guilty of indecency with a child by contact and sentenced to two years' confinement. He was released in 2000.

[2]As of September 1, 2005, Chapter 62 of the Texas Code of Criminal Procedure was redesignated as TEX. CODE CRIM. PROC. ANN. arts. 62.001, et seq., and amended by Act of May 26, 2005, 79th Leg., R.S., ch. 1008, § 1.01, 2005 Tex. Gen. Laws 3385. Because Martin was engaged in the conduct at issue prior to September 1, 2005, all references to the Texas Code of Criminal Procedure herein reference the law in effect before the 2005 amendment.

[3]This appeal deals with Martin's conviction in trial court cause number 19,347-2006 for failure to verify in 2004. In a companion case, appellate case number 06-06-00233-CR, trial court

2

We reverse the judgment of the trial court and remand this case for further proceedings because—although (1) Martin's multifarious point of error assailing the jury charge fails and (2) the evidence is legally sufficient to support Martin's conviction—(3) the evidence is factually insufficient to support Martin's conviction.

*The Sex-Offender Registration Program*

Sex offenders falling within the scope of the registration requirements must complete what is known as a sex-offender registration form. The Sex Offender Registration Program (SORP) provides that the Texas Department of Public Safety (DPS) will provide a registration form to local law enforcement authorities, among others, and outlines when and how the registration form should be completed on release of a sex offender subject to registration. *See* TEX. CODE CRIM. PROC. ANN. art. 62.02.

A substantial amount of information is required by the sex offender registration form:

(1) the person's full name, each alias, date of birth, sex, race, height, weight, eye color, hair color, social security number, driver's license number, shoe size, and home address;

(2) a recent color photograph or, if possible, an electronic digital image of the person and a complete set of fingerprints;

(3) the type of offense the person was convicted of, the age of the victim, the date of conviction, and the punishment received;

cause number 19,346-2006, Martin was convicted of failure to comply with sex offender registration requirements for his alleged failure to verify and failure to report a change of employer on March 24, 2005.

3

(4) an indication as to whether the person is discharged, paroled, or released on juvenile probation, community supervision, or mandatory supervision;

(5) an indication of each license . . . that is held or sought by the person;

(6) an indication as to whether the person is or will be employed, carrying on a vocation, or a student at a particular public or private institution of higher education in this state or another state, and the name and address of that institution; and

(7) any other information required by the department.

TEX. CODE CRIM. PROC. ANN. art. 62.02(b).

Failure of a sex offender to comply with any requirement of Chapter 62 of the Texas Code of Criminal Procedure is a felony. *See* TEX. CODE CRIM. PROC. ANN. art. 62.10. As charged against Martin, the failure is a third-degree felony.

The requirement Martin has been convicted of failing to meet is his annual obligation to "verify the information in the registration form maintained by the [local law enforcement] authority for" Martin, specifically, information reporting his change in employment. *See* TEX. CODE CRIM. PROC. ANN. art. 62.06.

As applicable to Martin, Article 62.06 sets out a specific procedure to be used to allow Martin to verify his required data, which includes his employment. Paragraph (a) of that article effectively requires Martin to report to the Wood County Sheriff's Department once each year, within thirty days before or after his birthday—March 29—"to verify the information in the registration form maintained by" that office for Martin. *See id*. Paragraph (c) requires the officials to get from

4

Martin proof of his identity and residence before giving him "the registration form . . . for verification." *See* TEX. CODE CRIM. PROC. ANN. art. 62.06(c).

> If the information in the registration form is complete and accurate, the [registrant] shall verify registration by signing the form. If the information is not complete or not accurate, the [registrant] shall make any necessary additions or corrections before signing the form.

*See id.* The statutory scheme thus contemplates that sex-offender registrants will be given the registration form, presumably containing the latest information on file with the State, and that the registrant will be given the chance to approve or further update the information, so that the form will reflect correct information before he or she signs it, thus "verify[ing] the information in the registration form."

In this case, the State has chosen to modify that contemplated procedure by requiring Martin to verify his information annually using an "update form" rather than a "registration form." The center or main portion of the update form—see State's Exhibits 4, 5, and 6 and Defense Exhibits 3, 4, 5, and 6—has consistently, from 2000 through 2005, called for the registrant's (1) "driver license" number, state, and type; (2) "ID#" and state; (3) "address" (with direction that it include "Physical address, city and zip code") and whether that address is urban or rural; (4) "Telephone #"; (5) "License Plate No." and state; (6) "Vehicle Make," model, year, and color; (7) "Occupational License #" and authority; and (8) "Occupation," name of employer, and city or town of employer. With the possible exception of the fact that the form calls itself an "update form," the update form says nothing to the effect that the information in those blanks indicates a change from the original

5

registration form or from any previous update form. The language of the form requests the data, simply and unconditionally; the form's request is not conditioned on there being a change in previously reported data. The form warns the registrant that he or she is "required to verify your registration" and that failure to do so will result in criminal penalties being exacted.

There is no evidence that any version of the actual registration form was used in this case, except that in 2000 the initial registration form was generated. Martin's annual verification was done each year using only update forms.

*(1) Martin's Multifarious Point of Error Assailing the Jury Charge Fails*

Martin complains, in various ways and in one point of error, about the jury charge.[4] His stated point of error complains both that the trial court wrongfully denied Martin's requested jury instruction and that the charge as given failed to define what Martin alleges were two different crimes set out by the indictment. In the body of his argument under that point of error, Martin also argues that there was an improper variance between the indictment and the jury instruction.

---

[4]We may overrule any multifarious or inadequately briefed point of error. *See, e.g., Graff v. Berry*, No. 06-07-00058-CV, 2008 Tex. App. LEXIS 2069, at *3–4 (Tex. App.—Texarkana Mar. 18, 2008, no pet. h.); *Foster v. State*, 101 S.W.3d 490, 499 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *McGuire v. McGuire*, 4 S.W.3d 382, 385 (Tex. App.—Houston [1st Dist.] 1999, no pet.); *Hollifield v. Hollifield*, 925 S.W.2d 153, 155 (Tex. App.—Austin 1996, no writ); *H.B. Zachry Co. v. Ceco Steel Prods. Corp.*, 404 S.W.2d 113, 133 (Tex. Civ. App.—Eastland 1966, writ ref'd n.r.e.); *see also* TEX. R. APP. P. 38.1. *But see Chimney v. State*, 6 S.W.3d 681, 688 (Tex. App.—Waco 1999, pet. ref'd). Although Martin's first point of error is multifarious, we address his arguments in the interest of justice.

6

To the extent Martin complains about the trial court's failure to submit his requested charge, that complaint has not been presented for our review. The text of his requested instruction can be found nowhere in the appellate record. Where the text of a proposed jury instruction does not appear in the appellate record, the record is not adequate to allow consideration of whether that instruction should have been given. *Key v. State*, 151 S.W.3d 619, 625 (Tex. App.—Beaumont 2004, pet. ref'd); *see Hughes v. State*, 612 S.W.2d 581, 583 (Tex. Crim. App. 1981); *Polanco v. State*, 475 S.W.2d 763 (Tex. Crim. App. 1971); *Johnson v. State*, 467 S.W.2d 431 (Tex. Crim. App. 1971).

In each of his arguments assailing the charge, Martin's focus seems to be on the abstract, definitional portion of the charge, in paragraph I, which states that a person commits the offense of failing to comply with sex-offender registration requirements if, being required to register, he or she "fails to report a change of employment." While that, generally, is a correct statement of law, it is at least potentially misleading, standing alone, and does not match the indictment or the application portion of the jury charge. Two different ways in which a sex offender's failure to report a change of employment could constitute a violation are (1) a simple failure to report a change of employment within seven days after that change[5] and (2) the failure to report a change of employment as part of his or her periodic obligation to verify his or her sex-offender registration information. In this case,

---

[5]The State concedes it did not charge Martin with this type of failure to report a change of employment. *See* TEX. CODE CRIM. PROC. ANN. art. 62.05.

7

Martin was charged with and convicted of the latter—failing in his 2004 annual verification to report his changed employment. Martin asserts that paragraph I of the jury charge describes the former.[6]

The abstract or definitional portions of a jury charge are designed to help the jury understand the meaning of concepts and terms used in the charge's application portions. *Caldwell v. State*, 971 S.W.2d 663, 667 (Tex. App.—Dallas 1998, pet. ref'd). A charge is adequate if it contains an application paragraph that authorizes a conviction under conditions specified by other paragraphs of the charge to which the application paragraph necessarily and unambiguously refers, or contains some logically consistent combination of such paragraphs. *Plata v. State*, 926 S.W.2d 300, 302 (Tex. Crim. App. 1996); *Escobar v. State*, 28 S.W.3d 767, 779 (Tex. App.—Corpus Christi 2000, pet. ref'd); *Caldwell*, 971 S.W.2d at 666.

A jury is authorized to convict based on the application portion of a charge; an abstract charge on a legal theory does not bring that theory before the jury unless the theory is applied to the facts. *McFarland v. State*, 928 S.W.2d 482, 515 (Tex. Crim. App. 1996); *Campbell v. State*, 910 S.W.2d 475, 477 (Tex. Crim. App. 1995). If the application paragraph of a jury charge does not incorporate a theory recited only in the abstract portion of the charge, a jury cannot convict on that theory. *Hughes v. State*, 897 S.W.2d 285, 297 (Tex. Crim. App. 1994); *Mallard v. State*, 162 S.W.3d 325, 334 (Tex. App.—Fort Worth 2005, pet. ref'd).

---

[6]The referenced phrase in paragraph I of the charge failed to give details of either way a failure to report a change in employment can be a violation. It describes neither the periodic verification requirement nor the seven-day period within which a change of employment must be reported. It is simply an incomplete description of either.

To consider alleged charge error, we must determine (1) whether error actually exists in the charge, and (2) whether any resulting harm requires reversal. *Mann v. State*, 964 S.W.2d 639, 641 (Tex. Crim. App. 1998); *Escobar*, 28 S.W.3d at 779; *Duke v. State*, 950 S.W.2d 424, 426 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984)). That determination must be made by examining the charge as a whole, considering the interplay between the abstract or definitional part of the charge and the application portion—the portion that applies the law to the facts of the case. *Plata*, 926 S.W.2d at 302, *overruled on other grounds, Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997); *Caldwell*, 971 S.W.2d at 666; *White v. State*, 610 S.W.2d 504, 507 (Tex. Crim. App. 1981); *Escobar*, 28 S.W.3d at 779. The meaning of a jury charge must be taken from the whole charge. *Plata*, 926 S.W.2d at 302; *Warfield v. State*, 974 S.W.2d 269, 271 (Tex. App.—San Antonio 1998, pet. ref'd); *Caldwell*, 971 S.W.2d at 667. Our review should not be limited to just one part of the charge standing alone. *Ybarra v. State*, 890 S.W.2d 98, 106 (Tex. App.—San Antonio 1994, pet. ref'd). When the jury charge, considered together, is sufficient to present the applicable law and to protect the defendant's rights, we should not reverse the judgment on that basis. *Parker v. State*, 594 S.W.2d 419, 424 (Tex. Crim. App. 1980). Our review of the entire jury charge leads us to conclude that the charge, as a whole, presented the applicable law sufficiently to protect Martin's rights. Though the abstract

9

portion of the charge is questionable, the application portion essentially tracks the indictment.[7] We find no error in the challenged aspects of the charge.

Even if there were error, there was no harm. Because Martin objected to the charge, if there was error in the definitional portion of the charge, we search for only some harm. *Abdnor v. State*, 871 S.W.2d 726, 732 (Tex. Crim. App. 1994); *Davis v. State*, 967 S.W.2d 476, 479 (Tex. App.—Beaumont 1998, no pet.). "The presence of any harm, regardless of degree, which results from preserved charging error, is sufficient to require a reversal of the conviction." *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986).

An erroneous definitional section of a jury charge can be "saved" by a proper application section. An abstract statement of the law that goes beyond the allegations in the indictment ordinarily will not present reversible error because such expansions on the indictment's allegations are effectively restricted by the charge's application of the law to the facts, which limits the jury's deliberations to the allegations in the indictment supported by evidence. *See Sandig v. State*, 580 S.W.2d 584, 586 (Tex. Crim. App. 1979); *Thompson v. State*, 12 S.W.3d 915 (Tex. App.—Beaumont 2000, pet. ref'd). That same concept would apply here. The questionable wording of the abstract definitional paragraph was effectively restricted by the application paragraph, thus limiting the jury to deliberate on the crime alleged in the indictment.

---

[7]The only difference between the language of the indictment and that of the application portion of the charge is that the indictment sets out three alleged mental states—intentional, knowing, and reckless—in the conjunctive ("and"), while the charge sets them out in the disjunctive ("or"). Martin does not complain about that difference.

10

The way the application paragraph focused the jury on Martin's annual verification requirement, and on the date of his 2004 verification as the date of the offense, eliminated any danger that a juror might vote to convict Martin for a simple failure to report a change of employment in some other way or at some other time. In a harmless error analysis matching a definitional-section error in a jury charge with a correct application paragraph, it was determined there was no danger of a conviction based on the abstract section, in the face of the application section. *See Navarro v. State*, 863 S.W.2d 191, 196 (Tex. App.—Austin 1993), *pet. ref'd*, 891 S.W.2d 648 (Tex. Crim. App. 1995). We reach the same conclusion here: there was no harm.

We find no validity, either, in the specific language of Martin's complaints about the charge as given, either that the charge failed to define two different crimes set out by the indictment or that there was an improper variance between the indictment and the jury instruction. By our reading, the indictment, as well as the application paragraph of the jury charge, set out only one crime. Also, comparing the indictment with the application paragraph of the charge reveals nothing of the complained-of variance.

We overrule Martin's multifarious point of error complaining of the jury charge.

*(2) The Evidence Is Legally Sufficient to Support Martin's Conviction*

After reviewing the parties' initial briefs, the applicable law, and the evidence, we asked the parties to provide supplemental briefing on the question of whether the evidence is factually and legally sufficient to support Martin's conviction. After analysis of that briefing and careful review

11

of the evidence, we conclude that, while the evidence is legally sufficient, it is factually insufficient to support the conviction in this case.

In reviewing the legal sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000).

Debra Miears, Director of Wood County Community Supervision and Corrections Department, has been with the department for twenty-six years and specializes in the supervision of sex offenders. Miears had only limited dealings with Martin, having met with him only in 1997 when Martin was first placed on community supervision. Miears testified about the extensive information required on initial registration and about the notification procedures in which an individual is given detailed instructions on the registration requirements. Miears informed Martin that he had to register for life and had to report a change of address within seven days. She also informed him that he was required to report a change in employment.[8]

---

[8]It appears that, during trial, the State allowed some confusion into the trial in the form of testimony which focused not on Martin's failure to disclose his change of employment as part of his annual verification, but instead on the failure to report a change of employment within seven days after that change. In response to redirect examination, Miears testified that sex offenders are required to notify law enforcement of a change in their address or employment within seven days of that change. Consistent with the law, Miears conceded that the failure to report a change of employment is a separate offense and that failure to verify the information in the sex-offender registration form is in itself an offense.

12

On cross-examination, Miears confirmed that the verification requirement relates to the sex offender registration form maintained by Wood County. She also testified that Martin's duty was to come in on an annual basis to verify the information in the sex offender registration form and that the failure to come in to verify the information in the sex-offender registration form constitutes a violation of the registration requirements.

Shirley Boddie was the office manager and had payroll responsibilities for Martin's former employer, Boddie's Roofing. She testified that Martin worked for them in January 2002 and then again from May 2002 to June 2003. From Boddie's uncontradicted testimony, it is apparent that Martin worked for that company at the time of his 2003 verification, but not at the time of his 2004 verification.

Debbie Foster, the Chief Deputy of the Wood County Sheriff's Office, initially insisted that the "Sex Offender Update Form" from 2004 was a sex-offender registration form, but later relented and agreed that it was, in fact, an update form. Upon further cross-examination, Foster also distinguished between the information contained on the sex-offender registration form and the information required on the sex-offender update form, the former being much more extensive than the latter.

The central witness in this case is Misty Holland. Holland was the former Wood County clerk responsible for sex-offender registration. As such, Holland was the verification official who oversaw Martin's completion and execution of the March 24, 2004, update form involved in this

13

case—and also the April 1, 2005, update form involved in the companion case now on appeal to this Court.

According to Holland, she received specialized training in sex-offender registration from the DPS and used the forms provided by them. Holland explained that she understood a change of employment must be reported within seven days—testimony risking confusion concerning the crime being prosecuted.

Holland testified that, in accordance with her training, she instructed registrants, and specifically Martin, that the above-referenced blanks in the update form should be completed only if there had been changes in that information from the prior year's update form.[9] She agreed that she

---

[9]The record suggests that Wood County treats this matter more as a failure by Martin to verify his previous update forms, which is not an enumerated requirement under the SORP. The procedure actually followed with Martin over the years is internally inconsistent as well, since the 2003 form by which all changes are measured in 2004, according to Holland, has all the blanks completed. The daunting nature of that task is vividly illustrated by our opinion in *Martin v. State*, cause number 06-06-00233-CR, in which, according to this procedure in the following year (2005), Martin would have had to compare then-current information to the blank 2004 update form and make changes not knowing precisely what the blanks meant.

We are troubled by the practice described by Holland, that is, comparing the current update form with only the update form from the prior year. If, in any year, the prior year's update form actually had data in the relevant blanks, as was the case in this matter, a change from that reported data could be properly reflected. But if the prior year's update form had a blank, indicating, according to Holland, no change in that data from the prior year, both the registrant and the verification officer would have been without proper information with which to complete the current update form. They would be comparing a current status of employment or address or telephone number, for example, with a blank indicating that in the prior year's form no change in that information had been reported. They would be forced to rely on memory of what had been done in past years and what the facts reflected in those years. Such difficulty would be avoided by following the statute's contemplated procedure of using the registration form at the time of each periodic

14

referred to the 2003 update form to complete the 2004 update form and explained the procedure

Wood County follows when a person reports for annual verification:

> [DEFENSE]: What is your training as to when to fill out this information [on the sex-offender update form]?

> [HOLLAND]: Okay. The only time we fill out anything in the blanks is if there is a change, like a change of address or a change of employment, vehicle change. And since we went over [the 2003 update form], there was no change so there was nothing in [the 2004 update form] that I filled out.

So, according to Holland, the registrant need only fill out information on the update form if there is a change from the previous year's update form. Holland explained that Wood County measured changes by comparing the update form to the update form filled out the previous year. The State referred to this procedure as "an annual update" even though there is no statutory procedure so labeled.[10]

Holland interpreted the 2003 update form to indicate that, on March 29, 2003, Martin lived at 1422 Broad Street in Mineola and worked at Boddie's Roofing. To Holland, the 2003 form also indicated that, since completing the 2002 update form, Martin had experienced a change in employment to Boddie's Roofing.[11] Though Holland was not asked about any change of residence

---

verification, rather than an update form.

[10]At trial, testimony concerning the various forms and requirements became confused; some witnesses often used terms such as "verification," "update," "registration," and "reporting" interchangeably.

[11]Holland also testified that offenders such as Martin are required to register within seven days of their birthday each year. She was incorrect, in that the period within which an annual

15

indicated by the 2003 form, presumably she would have been consistent in her testimony and said that the 2003 update form would be properly interpreted to indicate that Martin had also changed his residence during the period elapsed between his completion of the 2002 and 2003 update forms. But, we note, the 2002 update form and each annual update form before that, all the way back to the original registration form, had reflected the same address at 1422 Broad Street in Mineola.[12]

We also note a similar phenomenon as to Martin's reported telephone number. In the original registration form and in the updates for 2000 and 2001, Martin's telephone number was listed as the same number. In the 2002 update form, it was changed to a different number, but that same, changed number was reflected in the 2003 form, as well. If only changes were to be entered into that blank from year to year, the forms would have been filled out differently.

Based on the way the update forms were filled out over the years for which exhibits are in the record, the policy in place, before Holland began her role as verification officer, appears to have been to report the information in the update forms if there was any information to report, not just when the information changed.

Significantly, when Martin reported to Holland March 24, 2004, Holland did not give him the sex-offender registration form to verify. She agreed that, because she did not give him the sex-offender registration form, Martin would not be able to verify that the sex-offender registration form

registrant is to verify his or her information is thirty days on either side of his or her birthday.

[12]The original registration form had reflected that the address was on "W Broad St.," while all the other entries omitted the "W." We ignore that minimal difference for these purposes.

16

was "complete and accurate." She explained that supplying the sex offender with the registration form was not a part of the procedure that Holland was directed to follow. Instead of being given the registration form to verify the information on it, Martin was to compare his current information to the information on last year's update form and, in 2004 and 2005, complete the information on the update form only if any change were indicated.[13]

Holland testified that she did not believe there was a difference between someone registering in the first place and that person verifying his or her information annually, but she also conceded that the failure to verify the information on the sex-offender registration form and failure to report a change are separate offenses. "That's completely, that's a different offense than failing to verify the information in the registration form received by the Wood County Sheriff's Department." Looking at Defense Exhibit 1, Holland recognized the document as the "original or the sex offender registration form." She agreed that Defense Exhibit 1 is the sex-offender registration form that is received by the Wood County Sheriff's Department from the DPS.

With the foregoing in mind, we focus on the crux of the proof in this matter. The evidence demonstrates that Martin's 2003 update form reflected his "occupation" as "roofer" and his "employer" as "Boddie's Roofing." Holland testified that, pursuant to her training, such 2003 information meant that Martin's occupation and employer had changed to that status since his 2002

---

[13]On cross-examination, Holland agreed with defense counsel's assessment that the "official" sex-offender registration form and the 2004 update form are consistent in that no employer is listed on either.

update form. The evidence further demonstrates that Martin's 2004 update form reflected a blank for his "occupation" and "employer." According to Holland, that meant that Martin still worked as a roofer for Boddie's Roofing, not that he was unemployed at the time of the 2004 update. Uncontradicted evidence established that Martin, in fact, had worked for Boddie's Roofing at the time of his 2003 update but was unemployed at the time of the 2004 update.

One unavoidable question raised by the foregoing evidence is whether evidence that only update forms such as those used here, rather than any registration form, were used for annual verification purposes can be legally sufficient to support a conviction. Martin argues on appeal that the State was required to give him a registration form each year before it could prove the felony that Martin failed to verify his information. While the statutory scheme undoubtedly contemplates that a registration form, not an update form, will be used for each verification, the requirement Martin has been convicted of breaching is the obligation to verify specific "*information* in the registration form" (emphasis added), not a failure to verify the registration form itself.[14]

We also note that the SORP does not explicitly provide a sex offender any defense for a failure by the State to do any particular act, such as delivering him or her a particular form. *Varnes v. State*, 63 S.W.3d 824, 828–29 (Tex. App.—Houston [14th Dist.] 2001, no pet.). Instead, with few exceptions, the burdens are placed on the offender.

---

[14]It should also be noted that the indictment and the jury charge also referred to the offense as failing to verify the "information in the registration form," not a failure to verify the registration form itself.

Absent explicit legal authority that the registration form itself *must* be used to support proof of any felony for failure to comply with sex-registration requirements, we will not engraft that requirement onto the already quite detailed statutory scheme or interpret the statutory scheme in that fashion. Such a step is for the Legislature or the Texas Court of Criminal Appeals to take, if it is to be taken.

According to Holland's explanation of the procedure and instructions followed, Martin would have looked at the 2003 form and, by leaving the 2004 form blank, effectively represented that he was still employed at Boddie's Roofing. The evidence shows that he was not; Boddie testified that Martin last worked at Boddie's Roofing in June 2003. In other words, according to Holland, Martin gave inaccurate information relating to a required disclosure on the sex-offender registration form by representing that he was still employed at the roofing company. Holland testified that she asked Martin if any of the information on the 2003 form had changed, to which question Martin indicated nothing had changed. Giving this false information concerning his employment status undermines the purpose of the verification requirement and the sex-offender registration program's goal of maintaining accurate, updated information on those required to register.

Although the record contains evidence contrary to the jury's verdict, evidence that we examine more closely next, a rational juror could have found each element of the offense of failure to comply with the sex-offender registration requirements in the form charged here. Viewing the evidence in a light most favorable to the verdict, we conclude that the evidence is legally sufficient

19

to conclude that Martin failed to comply with sex-offender registration requirements when he chose to leave blank the employment-related questions on the 2004 update form.

*(3) The Evidence Is Factually Insufficient to Support Martin's Conviction*

In a factual sufficiency review, we review all the evidence, but do so in a neutral light and determine whether the evidence supporting the verdict is so weak or is so outweighed by the great weight and preponderance of the evidence that the fact-finder's verdict is clearly wrong or manifestly unjust. *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); *Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006); *Watson v. State*, 204 S.W.3d 404, 414–15 (Tex. Crim. App. 2006); *Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). In a factual sufficiency review, we are to afford "due deference" to a fact-finder's determinations. *Marshall*, 210 S.W.3d at 625. Although an appellate court reviewing factual sufficiency has the ability to second-guess the fact-finder to a limited degree, the review should still be deferential, with a high level of skepticism about the fact-finder's verdict required before a reversal can occur. *Roberts*, 220 S.W.3d at 524.

Casting a neutral light on the evidence changes the analysis.

The State asserts that the update form is sufficient and that, in completing the update form, the blanks for driver's license, address, occupation, and employer would be completed only if those bits of information had changed since the last update form. If that is so, and given the record's suggestion that such apparently rests entirely on orally communicated policies and instructions, how is one to know what information to report and how to report it? Should compliance be measured by the express wording of the form being used, in this case the update form? If the update form is to

reflect changes, is it to reflect changes from the latest update form or from the latest registration form? Is the gravamen of the crime lying to whatever officer is chosen to take the registrant's verification, or is it improperly completing a form based on the express wording of the form? And, if the instructions given by the officer conflict with the express language in the form, which should control? Should an offender be forced to decide between conflicting instructions at the risk of another felony conviction and jail time? We have been unable to find any caselaw that answers any of those questions, or any reported case discussing a violation of the annual verification requirement based on allegedly incorrect information given. All other reported cases involve a registrant's failure to appear on a timely basis for verification.

Miears agreed that the verification requirement relates to the information in the sex-offender registration form. If the update information is to be compared with the original registration form, the sex-offender registration form shows that, in early 2000, Martin had no employer. That was also reflected in Martin's 2000 and 2001 update forms: blanks for the employment-related information, indicating either no change from the initial unemployment or indicating that, in each case, there was no employer to report. The 2002 update form reflects Martin's "occupation" as "machinery" and "employer" as "Greeding Construction." As we have noted, the 2003 update form reflects Martin's occupation as "roofer" and his "employer" as "Boddie's Roofing."

Through the completion of the 2003 update form, it did not matter whether the employment-related information should have reflected only changes in employment or should have reflected the current status of Martin's employment. Nor did it matter until then whether the update form in any

year should be compared to the original registration form or the prior year's update form. But then, between the 2003 and 2004 updates, Martin's employment status changed from employed to unemployed. If the 2004 update form should have been completed as the form called for, that is, to reflect the current status of Martin's employment rather than a change, the unemployed Martin would have appropriately left those spaces blank. If the update form should reflect only changes, but those should be changes from the original registration form, the employment spaces should have been blank as well. If, however, as Holland testified, the 2004 update form should have been completed contrary to the express terms of the form, and the 2004 form compared to the 2003 form, Martin misreported his employment status on that form by leaving the spaces blank.

Testimony that contradicts the conclusion drawn from the forms is Holland's description of Wood County's procedure which, in a neutral light, seems not only inconsistent with the express requirement of the statute[15] and the express wording of the update form, but also a change of policy from prior years and internally inconsistent. Put another way, the evidence that shows that Martin gave inaccurate information during his verification procedure comes in the form of Holland's

---

[15]The statute outlines the procedure to be followed:

> A local law enforcement authority with whom a person reports under this article shall require the person to produce proof of the person's identity and residence before the authority gives the registration form to the person for verification. If the information in the registration form is complete and accurate, the person shall verify registration by signing the form. If the information is not complete or not accurate, the person shall make any necessary additions or corrections before signing the form.

TEX. CODE CRIM. PROC. ANN. art. 62.06(c).

testimony which contradicts the conclusion drawn from a faithful application of the plain language of the statute and that of the update form. Testimony that Martin gave inaccurate information when he arrived at the Wood County Sheriff's Department is undermined when the record suggests that Wood County followed an inconsistent procedure, one that diverges from the specific statutory procedure.[16] This is not evidence on which this conviction may stand. It is on this principle that we exercise our limited ability to second-guess the jury and express an appropriately high degree of skepticism about the jury's verdict. We conclude that Holland's testimony, the evidence supporting the verdict, is so weak or is so outweighed by the great weight and preponderance of the evidence that the fact-finder's verdict is clearly wrong or manifestly unjust**.**

---

[16]We recognize there may be a number of reasons why the procedure here departs from the statutory provisions. Perhaps, the procedure was implemented incorrectly. Or, perhaps, Holland made a procedural mistake in her former job. We add that some time had passed between Martin's March 2004 visit and trial in August 2006; Holland may have an imperfect recollection of the procedure she was directed to follow at her former position. Nonetheless, the record demonstrates that an irregular procedure was followed with respect to Martin's attempts to verify his sex offender registration form.

We reverse and remand this case to the trial court for further proceedings consistent with this opinion.

Josh R. Morriss, III
Chief Justice

Date Submitted: October 24, 2007
Date Decided: April 25, 2008

Publish