

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-07-00138-CR
_____

JASON DEMARCUS FORT, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 115th Judicial District Court
Upshur County, Texas
Trial Court No. 14,377

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

When Gilmer police executed a search warrant at 904 Warren Street, Jason Demarcus Fort was there with various men, but had not been there as long as had many of the others. Fort was in a back bedroom when police arrived and tried to break out a window to escape, cutting himself badly in the process. When officers corralled him and were in the process of taking him to an emergency medical vehicle for treatment, Fort made another effort to escape, running out the front door. This time, Fort was tackled and taken to the hospital. Several batches of crack cocaine were later found on the premises. Some of those present at the time protested that the cocaine did not belong to Fort. Fort appeals his resulting conviction for possession of a controlled substance with intent to deliver, within 1,000 feet of a school zone. After reviewing the record and evaluating the arguments of counsel, we hold that (1) the evidence is sufficient to support Fort's conviction, (2) allowing the cross-examination of one of Fort's witnesses was not error, and (3) a hearing on Fort's motion for new trial was not requested. We, therefore, affirm the trial court's judgment.

*(1)     The Evidence Is Sufficient to Support Fort's Conviction*

Fort first complains the evidence was insufficient. In his brief, he cites the standards of review for legal and factual sufficiency, but his single point of error does not articulate which standard he believes is not met or whether he is arguing that neither were met. His argument asserts that, where there were trace amounts of cocaine found on the digital scales in his pocket, Fort could

2

at most be guilty of possession of less than one gram of controlled substance in a drug-free zone. The jury was instructed on this lesser offense, yet still convicted Fort of the charged offense.[1]

In reviewing the legal sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In a factual sufficiency review, we review all the evidence, but do so in a neutral light and determine whether the evidence supporting the verdict is so weak or is so outweighed by the great weight and preponderance of the evidence that the jury's verdict is clearly wrong or manifestly unjust. *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); *Watson v. State*, 204 S.W.3d 404, 414–15 (Tex. Crim. App. 2006); *Clewis v. State*, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996).

Under either sufficiency standard, it is unnecessary for the State's evidence to exclude every other possible hypothesis but that of the accused's guilt, as long as there are sufficient links to connect the accused to the crime. *Sonnier v. State*, 913 S.W.2d 511, 516 (Tex. Crim. App. 1995); *Benson v. State*, 240 S.W.3d 478, 482 (Tex. App.—Eastland 2007, pet. ref'd); *Harris v. State*, 133

---

[1]If Fort is asserting claims of legally and factually insufficient evidence, he has presented a multifarious point of error. We may overrule any multifarious or inadequately briefed point of error. *Martin v. State*, 252 S.W.3d 809, 813 n.4 (Tex. App.—Texarkana 2008, no pet.); *see also* TEX. R. APP. P. 38.1. *But see Chimney v. State*, 6 S.W.3d 681, 688 (Tex. App.—Waco 1999, pet. ref'd). Further, because it is unclear from his argument which claim he is presenting, his point is inadequately briefed. Nonetheless, we address his arguments in the interest of justice.

3

S.W.3d 760, 764–65 (Tex. App.—Texarkana 2004, pet. ref'd).  In the context of a charge of possession of controlled substance, many links to consider have ben recognized:

> (1) the contraband was in plain view or recovered from an enclosed place; (2) the accused was the owner of the premises or the place where the contraband was found; (3) the accused was found with a large amount of cash; (4) the contraband was conveniently accessible to the accused; (5) the contraband was found in close proximity to the accused; (6) a strong residual odor of the contraband was present; (7) the accused possessed other contraband when arrested; (8) paraphernalia to use the contraband was in view, or found on the accused; (9) the physical condition of the accused indicated recent consumption of the contraband in question; (10) conduct by the accused indicated a consciousness of guilt; (11) the accused attempted to flee; (12) the accused made furtive gestures; (13) the accused had a special connection to the contraband; (14) the occupants of the premises gave conflicting statements about relevant matters; (15) the accused made incriminating statements connecting himself or herself to the contraband; (16) the quantity of the  contraband; and (17) the accused was observed in a suspicious area under suspicious circumstances.

*Muckleroy v. State*, 206 S.W.3d 746, 748 n.4 (Tex. App.—Texarkana 2006, pet. ref'd) (citing *Lassaint v. State*, 79 S.W.3d 736, 740–41 (Tex. App.—Corpus Christi 2002, no pet.) and *Kyte v. State*, 944 S.W.2d 29, 31–32 (Tex. App.—Texarkana 1997, no pet.)).  It is the logical force of such links, rather than mere quantity, that is important in determining whether the evidence is sufficient to connect the accused to the alleged contraband or crime.  *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006).

Officer Mark Case testified that Ricky Moore, the owner of the house at 904 Warren, had expressed concerns to Case about several young men who hung around Moore's house and dealt crack cocaine.  Moore denied alerting the police.  Case and other law enforcement personnel placed the house under surveillance and eventually secured a search warrant.  Fort was seen at the house

during the surveillance period. On February 17, 2006, officers executed the search warrant, finding two plates with crack cocaine, a razor blade, a loaded pistol, and a set of digital scales on the kitchen table. In a back bedroom, Fort and Michael Brown broke out a window and tried to flee. Fort suffered cuts to his arms from the escape attempt and was not handcuffed because of his wounds. As officers led Fort out of the house, Fort ran out the front door but was apprehended. Fort was taken to a hospital and received stitches for the injuries to his arm. Randy Burris of the Gilmer Police Department testified the house was 317 feet from a Head Start school.

On Fort's person was found a set of digital scales, which bore cocaine residue. In Fort's shoe was $618.00 in currency. All the men at the scene were found to have currency hidden in their shoes. More than fifty grams of crack cocaine was found in the house in various locations. Moore denied that he had complained to police about the men hanging around his house or that he knew police had the house under surveillance. Moore did, however, admit he was intimidated by the men, calling them a "little gang" that would not leave when he asked them to do so.[2] He also did not deny knowing that drugs were being sold from his house. Moore admitted he used crack cocaine himself and had felony drug convictions which had sent him to prison "two or three times." He testified to being sure that none of the drugs found in his house belonged to Fort. Fort had arrived about twenty or thirty minutes before the police, and the other men, with the cocaine, had been present at least an

---

[2]Moore's sister had better luck; when they knew she was coming, the men would leave, only to return.

hour before the search. This was Moore's reason for feeling certain none of the cocaine could be attributed to Fort.

Fort, in his defense, also read into the record part of the testimony of fellow defendant Joshua Haynes.[3] In that excerpt, Haynes said that the cocaine belonged to him and the men present other than Fort. Haynes said Fort was not present when the drugs were purchased. Haynes pled guilty to a charge arising from this same search. After Fort's appellate counsel filed a brief in this appeal, Fort filed a pro se brief, which consisted of a lengthy handwritten statement from Reginald Johnson. Johnson was one of the other men arrested at the house on this occasion. In his statement, Johnson says the drugs at the house were not Fort's.

Fort does not have the right to hybrid representation, and Johnson's notarized statement was not presented to the jury. We are not permitted to consider evidence that was not part of the record below—such supplementation is inappropriate under our appellate rules, and such proffers of proof are generally acceptable only within the context of an application for writ of habeas corpus. *See Ramirez v. State*, 104 S.W.3d 549, 551 n.9 (Tex. Crim. App. 2003) (citing *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001)). Accordingly, we cannot consider it in this matter.

---

[3]About three weeks before the instant trial, another trial was held on Fort's charge. After testimony, but just before the jury was to deliberate, one of the jurors realized he worked with a relative of Fort, and that co-worker had made several attempts to contact the juror. The juror was uncomfortable with this situation and said it would affect his deliberations. The trial court declared a mistrial.

In Fort's case, a large amount of crack cocaine was found in plain view in the house, and various other quantities of cocaine were found throughout the house. Fort was in possession of drug paraphernalia—scales with trace amounts of cocaine—and a large amount of cash. Indeed, most of the men at the scene had large amounts of currency hidden in their shoes. Fort made two attempts to flee, which we can categorize as indicating consciousness of guilt. Evidence of attempting to flee is admissible and may indicate consciousness of guilt. *See Figueroa v. State*, 250 S.W.3d 490, 503 (Tex. App.—Austin 2008, pet. ref'd); *Smith v. State*, 118 S.W.3d 838, 841, 843 (Tex. App.—Texarkana 2003, no pet.). The large amount of cocaine at the house paired with Moore's testimony that many of these same men were frequently at the house dealing drugs—when added to Fort's possession of a large sum of cash and scales with cocaine residue and his two attempts to flee—strongly suggests that Fort's presence on the premises was not innocent.

The jury is free to believe or disbelieve the testimony of any witness, to reconcile conflicts in the testimony, and to accept or reject any or all of the evidence of either side. *Bottenfield v. State*, 77 S.W.3d 349, 355 (Tex. App.—Fort Worth 2002, pet. ref'd). A jury confronted with conflicting evidence may elect to believe one witness and disbelieve others and may resolve inconsistencies in the testimony of any witness, even to the extent of accepting the testimony of laypersons which disputes that of experts. *Cain v. State*, 958 S.W.2d 404, 408–09 (Tex. Crim. App. 1997). We may not substitute our own determination for that of the jury. *See Ortiz v. State*, 93 S.W.3d 79, 87–88 (Tex. Crim. App. 2002); *Scott v. State*, 934 S.W.2d 396, 399 (Tex. App.—Dallas 1996, no pet.).

It was up to the jury to evaluate the witnesses' credibility and to weigh testimony on both sides. The jury weighed the opposing evidence and found Fort guilty beyond a reasonable doubt. We find that the logical force of the above links all provide legally and factually sufficient evidence to support Fort's conviction. We overrule this point of error.

*(2)      Allowing the Cross-Examination of One of Fort's Witnesses Was Not Error*

Fort also claims error related to the cross-examination of a defense witness with "have you heard" questions concerning Fort's prior criminal record. Based on our conclusion that Fort's own direct examination opened the door to this topic, we find no error in the trial court's ruling.

In Fort's case-in-chief, he called Moore, at whose house the search was conducted. Moore said he knew all the men at the scene, including Fort. He had known Fort about ten years. On the day of the search and arrest, Moore said Fort had only recently arrived, about twenty to thirty minutes before officers arrived and executed the warrant. Based on this arrival time, Moore was sure none of the cocaine at the scene was Fort's, because the other men and the cocaine were already at the house when Fort arrived. When asked about the scales found in Fort's pocket, Moore said he knew nothing about that. Moore, who has diabetes and a prosthetic leg, said Fort frequently helped him around the house and brought him groceries. Fort, said Moore, would help with the dishes, sweep the floors, or leave money for Moore. All that led to Moore's testimonial that Fort was "a pretty good guy."

In response to Moore's testimonial of Fort's good character, the State asked to be allowed to cross-examine Moore using Fort's prior conviction for delivery of cocaine. The trial court allowed it over Fort's objection.

The State asked Moore if he was aware that Fort had been convicted in March 2002 for delivery of cocaine. Moore said he knew of the conviction but thought it was for marihuana.

The Texas Court of Criminal Appeals has reviewed a similar situation. *See Harrison v. State*, 241 S.W.3d 23 (Tex. Crim. App. 2007). In *Harrison*, a defense witness said the defendant "was a sweet person, he was a good person" and that he "watched my kids and I don't have a problem with him." *Id*. at 25. Citing Rules 404 and 405 of the Texas Rules of Evidence, and stating that "[a]lthough Appellant did not intentionally elicit [the witness'] character testimony, the non-responsiveness of [the witness'] statement does not change the fact that it was character evidence offered by a defense witness." *Id.* at 27; *see* TEX. R. EVID. 404, 405. The cross examination was allowed.

In an earlier case the court explicitly held that a witness who testifies about a defendant's good character may then be cross-examined to test the witness' awareness of relevant specific instances of bad conduct. *See Wilson v. State*, 71 S.W.3d 346, 349–50 (Tex. Crim. App. 2002). Wilson had called a cleric to testify about his involvement in Wilson's life and Wilson's character. The court held that, because a witness gave his good-character opinion of the defendant, the State was then entitled to ask questions about prior criminal acts. Although *Wilson* involved testimony

at the punishment phase, the Texas Court of Criminal Appeals' reasoning in *Wilson* and *Harrison* controls the instant situation.

A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *See Green v. State*, 934 S.W.2d 92, 101–02 (Tex. Crim. App. 1996). We will not reverse a trial court whose ruling was within the "zone of reasonable disagreement." *Id.* at 102.

We find the trial court did not abuse its discretion by allowing this line of cross-examination. We overrule this point of error.

*(3)    A Hearing on Fort's Motion for New Trial Was Not Requested*

Finally, Fort complains the trial court erred by not setting a hearing on Fort's motion for new trial. Fort filed a motion for new trial alleging that, following trial, the district attorney and Fort's trial counsel spoke to a jury member who stated that he had been reporting and complaining of drug trafficking in the area for five years and that the jury member believed Fort had been trafficking in the jury member's neighborhood.

Fort's trial counsel filed a motion requesting a new trial and attached an affidavit describing the conversation with the jury member. Nowhere in the motion, though, did Fort request a hearing on the matter; nor was a proposed order with a hearing date attached to the motion.

This situation is controlled by *Rozell v. State*, 176 S.W.3d 228 (Tex. Crim. App. 2005). In *Rozell*, the appellant filed a motion for new trial, but did not request a hearing on the motion.[4]

---

[4]Rozell though, unlike Fort, did attach to his motion a proposed order form listing "options [for the trial court] of having a hearing or ruling on the motion without a hearing, which, without a

10

Rozell argued on appeal that the trial court erred in failing to hold a hearing after Rozell had presented, or filed, his motion. But the Texas Court of Criminal Appeals pointed out that "presentment" of a motion for new trial requires giving the trial court actual notice of the relief sought. *Id.* at 230; *Todd v. State*, 242 S.W.3d 126, 133 (Tex. App.—Texarkana 2007, pet. ref'd). Analogizing to the principles behind the doctrine of preservation of error, the Texas Court of Criminal Appeals ruled that a trial court's ruling should not be reversed where the defendant did not timely make the trial court aware of the alleged error and give the trial court an opportunity to correct it. *Rozell*, 176 S.W.3d at 230. "Presenting the motion, along with a request for a hearing, is required to let the court know that the defendant wants the trial court to act on the motion and whether the defendant would like a hearing on the motion." *Id.* Based on the record before us, we find that Fort failed to "give the trial court *actual notice* that he timely filed a motion for new trial and request[ed] a hearing on the motion for new trial." *Id.* We overrule this point of error.

---

more specific request, left to the trial court's discretion whether a hearing should be held." The Texas Court of Criminal Appeals held that "appellant did not adequately advise the trial court of his desire to have a hearing." *Rozell*, 176 S.W.3d at 231.

We affirm the judgment.


Josh R. Morriss, III
Chief Justice

Date Submitted:     June 17, 2008
Date Decided:       October 9, 2008

Do Not Publish