

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-09-00041-CR

_____

WILLIAM DUDLEY HALEY, III, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 336th Judicial District Court
Fannin County, Texas
Trial Court No. 22534

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

A Fannin County jury convicted William Dudley Haley, III, of indecency with a child by sexual contact. Following the jury's punishment assessment, the trial court sentenced Haley to twenty years' imprisonment. Haley appeals the conviction, contending the evidence is legally and factually insufficient and the trial court erred when it admitted evidence of a prior deferred adjudication that lacked proper findings that the evidence substantiated Haley's guilt in the prior case. We affirm the trial court's judgment.

## I.      Factual Background

On August 12, 2005, Haley approached his neighbor K.G. and her friend C.S., two females, and asked if they would be willing to work the concession stand at his paintball field. C.S. was thirteen years old at the time of the incident, and K.G. was fourteen years old. Haley asked the two girls if they would like a tour of the paintball field. After C.S. and K.G. agreed, Haley drove both girls out to his field to show them the facility. After Haley showed both girls around, he offered them a beer, which C.S. accepted.[1] Sometime after that, the conversation shifted into a sexual discussion about Haley's conquests. K.G. testified that Haley confessed "he had done a mother and a daughter at the same time, and how the youngest person he had been with sexually was a 13-year-old." K.G. testified that during the conversation, "[Haley] started showing C.S. and me how to

---

[1]K.G. first says Haley "offered K.G. a beer"; but later says he offered C.S. a beer; and C.S testified she had "a sip" of beer.

2

perform oral sex by taking our fingers and trying to stick it in his mouth." K.G. stated she was able to pull away, but Haley "managed to get C.S.'s [finger] in his mouth."

C.S. testified Haley "licked my finger up and down." Both girls testified Haley stated "[he] wanted to try to make [them] have multiple orgasms, and that if he couldn't, he would pay us a hundred dollars each." C.S. stated Haley "asked if K.G.'s breasts were real." Haley then asked both girls about their sexual experience and whether they had "done anything." K.G. testified Haley also announced "he had lotion and . . . toys . . . and promise[d] not to hurt us." According to K.G., Haley then proceeded to move "his hand all of the way down [C.S.'s] body." C.S. recalls "he took his finger and ran it from my neck all of the way down, avoiding the major areas, and ran all the way down to my thigh." During cross-examination, C.S. stated that Haley "ran his finger, he had made it to like where you run it between. He could have grazed--it's been so long, I really don't remember." Additionally, when cross-examined, C.S. was asked, "So he may or may not have done that, but you have no memory of it if he did?" C.S. replied, "Correct." However, on redirect examination by the State, the prosecutor asked C.S. to step down from the witness stand and demonstrate what Haley had done.

> Q.     [State]:   Okay. I'm sorry. This is going to be embarrassing. If you would stand right here, please, and with your finger, if you would, show the jury what he did to you.
>
> A.     (Witness complies.)
>
> Q.     Okay. And was it about that pace or was it faster or slower?

3

A.    It was pretty slow.

Q.    It was pretty slow?

A.    It wasn't that fast.

Q.    Okay.  And when he went between your chest, did he touch your breast, or no?

A.    He might have, but was just kind of probably a brush.

Q.    Okay.  You think he went between your breasts and he brushed your breast?

A.    Uh-huh.

K.G., though, unequivocally stated that C.S. had been physically touched on her breast by Haley.

Q.    [Defense Counsel]:    Did you see him touch her breast?

A.    Yes.

After the incident, C.S. and K.G. asked Haley to take them to K.G.'s home because it was getting late.  Haley took both girls home.

K.G. and her boyfriend later informed the police of the incident that occurred at the paintball field.  At trial, Sintrae Jackson, Haley's former neighbor, testified Haley confided "he would give [K.G.] a hundred bucks if he could give her multiple orgasms," and "she's like a school girl with big tits."  Jackson testified Haley stated that he had told K.G. that "paintball is kind of like sex.  It'll hurt at first, but after a while, you just get used to it."

4

Clint Williams, Haley's former neighbor, testified that on one occasion at the paintball field, he heard K.G. ask Haley for $400.00. He did not hear her say what the money was for. Paul Brandon Childers, Haley's nephew, testified K.G. "was wanting money for school clothes or something." Haley told her she could work at the paintball range for extra money, and K.G. asked Haley if she would get "$400 an hour." Haley replied that "she wasn't worth $400 an hour." Childers said he did not think K.G. was joking, because she did not laugh, where everyone else present did.

Haley took the stand in his own defense. He testified he never made contact with C.S.'s breast. Haley admitted he ran his finger down the front of the victim's body, but testified he never made physical contact. Additionally, Haley testified he had neither instigated the sexual conversation, nor had he demonstrated for them how to perform oral sex. Haley did admit asking K.G. to show her breasts to him. During Haley's cross-examination, he stated that K.G. wanted to have a threesome and that C.S. had mumbled she would "have sex for a hundred." Haley stated he turned down K.G.'s advances and responded, "if I was 40 years younger or y'all were 15 years older, I might consider. Right now, forget it." When questioned about the contact, Haley replied he was just playing, "but I was not going to get nowhere near any of her genital parts or anything. Her breast or any part of her." He did admit asking to see K.G.'s breasts, and asking if they were real. Haley advanced the defensive theory that the girls were involved in the burglary of his paintball range a

week or two after the alleged incident and that K.G. had been asking him for $400.00 for about three months before the allegations.

## II.    Legal Sufficiency

### A.    Standard of Review

In reviewing the legal sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000).  Additionally, we measure the evidence against the elements of the offense with the same kind of analysis as that applied in the test for a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *see also Grotti v. State*, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008).  A hypothetically correct jury charge is used to evaluate both legal and factual sufficiency. *Grotti*, 273 S.W.3d at 281. A hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240.[2]

---

[2]The hypothetically correct jury charge would require the State to prove Haley:  (1) engaged in sexual contact with the child or caused the child to engage in sexual contact (2) with intent to arouse or gratify the sexual desire of any person.  TEX. PENAL CODE ANN. § 21.11 (Vernon 2003). Sexual contact means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person:  (1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or (2) any touching of any part of the body of a child,

**B.      Analysis**

Haley complains that two elements for the offense of indecency with a child by sexual contact are absent.  He argues that the State failed to prove that he intentionally touched C.S.'s breast or that the sexual contact alleged even occurred.

While it is true the victim in this case, C.S., was somewhat equivocal in her description of the incident (Haley "might have" touched her breast "but [it] was just kind of probably a brush" and "when he ran his finger, he had made it to like where you run it in between.  He could have grazed - - it's been so long, I really don't remember"), but K.G. witnessed the encounter, and stated she saw Haley touch C.S.'s breast.  K.G. also described comments by Haley that "he had lotion and . . . toys . . . and promise[d] not to hurt us."  K.G.'s testimony then revealed that Haley proceeded to move "his hand all of the way down [C.S.'s] body."  C.S. testified Haley likely brushed his finger against her breast while making his way down her body and stopping mid-thigh.  K.G., though, testified she saw Haley touch C.S.'s breast.

Additionally, the State provided sufficient evidence that Haley intentionally touched C.S.'s breast.  Haley admitted to having a conversation on the subject of sex with two minors and that he and two children traveled to his paintball field where he offered each an alcoholic beverage.  Haley's testimony also revealed he asked K.G. to reveal her breasts to him.  K.G. also testified that Haley had kissed her on her cheek and that she had to pull away from him.  K.G.'s and C.S.'s testimony also

including touching through clothing, with the anus, breast, or any part of the genitals of a person. TEX. PENAL CODE ANN. § 21.11(c).  No argument is made that the jury charge is incorrect.

7

revealed that Haley placed the finger of C.S. in his mouth for the purpose of showing them how to perform oral sex. K.G. said she was able to keep Haley from doing the same to her finger. Intent may be inferred from circumstantial evidence such as acts, words, and the conduct of the appellant. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). The standards of review apply equally to direct and circumstantial evidence cases. *Earhart v. State*, 823 S.W.2d 607, 616 (Tex. Crim. App. 1991); *Vela v. State*, 771 S.W.2d 659, 660 (Tex. App.—Corpus Christi 1989, pet. ref'd). "It is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances." *Flores v. State*, 551 S.W.2d 364, 367 (Tex. Crim. App. 1977). Since "[e]ach fact need not point directly and independently to the guilt of the accused, as the cumulative effect of all the incriminating facts may be sufficient to support the evidence," there is sufficient legal evidence to sustain Haley's conviction. *Id.* at 367. Considering the above evidence, a rational jury could have found the essential elements of the crime, illustrated in the hypothetically correct jury charge, beyond a reasonable doubt. Haley's second point of error is overruled.

## III. Factual Sufficiency

### A. Standard of Review

Evidence that rationally supports a guilty verdict beyond a reasonable doubt under the legal sufficiency standard can still be factually insufficient. *Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006). Evidence is factually insufficient to support the verdict if it is clearly wrong or manifestly unjust or against the great weight and preponderance of the evidence. *Id*. The difference

8

between the legal and factual sufficiency standards is that "the former requires the reviewing court to defer to the jury's credibility and weight determinations while the latter permits the reviewing court to substitute its judgment for the jury's on these questions 'albeit to a very limited degree.'" *Rollerson v. State*, 227 S.W.3d 718, 724 (Tex. Crim. App. 2007) (quoting *Watson v. State*, 204 S.W.3d 404, 416–17 (Tex. Crim. App. 2006)); *Marshall*, 210 S.W.3d at 625. We view the evidence in a neutral light and determine whether the proof of guilt is obviously so weak as to undermine confidence in the verdict, or, if taken alone, is greatly outweighed by contrary proof so as to be clearly wrong and unjust. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008); *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); *Martin v. State*, 252 S.W.3d 809, 820 (Tex. App.—Texarkana 2008, pet. granted).

### B.    Analysis

Haley argues that his conviction lacked factual sufficiency because the State failed to prove the elements of intent to touch and actual touching. The jury had the opportunity to weigh the evidence presented by both parties and make a credibility determination. The testimony presented at trial could have led a reasonable jury to conclude that it was Haley's intent to arouse or gratify the sexual desire of a person. Haley's intent to cause arousal can be inferred from his conduct, remarks, and the surrounding circumstances. *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. 1981). In this case, the testimony presented demonstrated Haley: (1) led a conversation on the subject of sex with two young girls; (2) attempted to educate two young girls about oral sex by

9

placing the finger of a youth in his mouth; (3) made suggestive remarks to solicit sex from two youths; and (4) made physical contact with the breast of a child.

Any touching by a person, including touching through clothing, of a child's breast is considered sexual contact. *Resnick v. State*, 574 S.W.2d 558, 560 (Tex. Crim. App. 1978); *Miles v. State*, 157 Tex. Crim. 188, 247 S.W.2d 898, 899 (1952) (holding flesh-to-flesh contact not required in offense of fondling); *Guia v. State*, 723 S.W.2d 763, 765 (Tex. App.—Dallas 1986, pet. ref'd). Haley testified he never made physical contact with any part of C.S.'s body. However, K.G.'s testimony asserted that C.S. had been physically touched on her breast by Haley. Although C.S. herself was forgetful as to whether the touching actually occurred, a rational jury could have found both the actual touching and intent to touch elements were proved beyond a reasonable doubt through K.G.'s testimony.

Haley relies in great part on C.S.'s imprecise recollection of the event and cites *Connell v. State*, 233 S.W.3d 460 (Tex. App.—Fort Worth 2007, no pet.), in arguing the evidence is factually insufficient to support the jury's verdict. We find *Connell* distinguishable. There, the victim "testified that Connell's hand touched his anus 'on occasion' but at no point resolved whether a second touching had occurred." *Id.* at 469. The Fort Worth court found the evidence factually insufficient to support a second conviction for indecency by contact. Here, Haley was convicted only of one touching; and there was other evidence supporting the jury's verdict.

Haley testified he never touched C.S.'s breast, and he denied many of the suspect instances of conduct alleged by the two girls. He offered potential motives by the girls, that they were after money or had been involved in a burglary of his property. The jury was free to believe or reject Haley's theory. *See Laster v. State*, 275 S.W.3d 512, 524–25 (Tex. Crim. App. 2009); *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

Since the Court may only overrule the jury verdict if it "is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust," we find that the evidence is factually sufficient to sustain Haley's conviction beyond a reasonable doubt. *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); *Stone v. State*, 823 S.W.2d 375, 381 (Tex. App.—Austin 1992, pet. ref'd, untimely filed). Haley's first point of error is overruled.

**IV.    Admission of Prior Deferred Adjudication**

Haley claims that during the punishment phase of the trial, the trial court improperly admitted evidence of a prior deferred adjudication, which resulted from Haley's 1980 plea of guilty to another charge of indecency with a child. Haley claims the 1980 court order wherein the trial court accepted his plea of guilty and placed Haley on deferred adjudication was statutorily inadequate because the order did not explicitly state the evidence substantiated a finding of guilt. We overrule this point of error.

The trial court admitted evidence that on January 30, 1980, Haley pled guilty to a charge of indecency with a child and was placed on deferred adjudication. Haley objected to the introduction

11

of the 1980 court order, claiming it lacked evidence substantiating his guilt. Article 42.12, Section 5(a) of the Texas Code of Criminal Procedure (the statute's language in 1980 was substantially the same as the current version) allows a trial court to defer a finding of guilt "after receiving a plea of guilty or nolo contendere, hearing the evidence, and finding that it substantiates the defendant's guilt." TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(a) (Vernon Supp. 2008). The 1980 order states Haley pled guilty; the trial court heard evidence; and was of "the opinion . . . . that the ends of justice and the best interests of the public" and Haley would be served by deferring any adjudication of guilt.

## A. Standard of Review

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Mitchell v. State*, 931 S.W.2d 950, 953 (Tex. Crim. App. 1996); *Saenz v. State*, 843 S.W.2d 24, 26 (Tex. Crim. App. 1992). "As long as the trial court's evidentiary ruling is within the zone of reasonable disagreement, an appellate court may not disturb it." *Green v. State*, 934 S.W.2d 92, 101–02 (Tex. Crim. App. 1996).

## B. No Error in Admission of 1980 Order

Haley makes the novel claim that this evidence is inadmissible because it does not meet the requirement for deferred adjudication. But this is not an appeal alleging that a court improperly entered a deferred adjudication finding. The issue is whether the evidence is admissible as punishment evidence. At the punishment hearing, admissible evidence may not be only the prior criminal record of the defendant, but any evidence relevant to sentencing. This includes evidence

of extraneous crimes or bad conduct that is shown beyond a reasonable doubt to have been committed by the defendant. TEX. CODE CRIM. PROC. ANN. art. 37.07(3)(a)(1) (Vernon Supp. 2008). Here, the evidence included a 1979 written statement by Haley acknowledging in detail that he committed the offense of indecency with a child. This evidence was introduced as a stipulation in his 1980 hearing. Regardless of whether the 1980 judgment specifically states all the grounds necessary for a deferred adjudication determination, the evidence was also admissible as an extraneous crime or bad act which the jury could have found was shown beyond a reasonable doubt to have been committed by Haley.[3]

Even if it were necessary for us to find the deferred adjudication order was correctly entered, we believe the evidence would support such a finding. The docket sheet states that on January 30, 1980, the date of the deferred adjudication order, "Def. entered plea of guilty. . . . Evidence presented on guilt or innocence. Evidence considered sufficient to find Def. guilty." Article 42.12, Section 5(a) does not describe a precise predicate by which a trial court may place a defendant on deferred adjudication. In this case, the findings required by the statute were all present in evidence presented

---

[3]"As amended in 1993, Article 37.07, Section 3(a) makes admissible, in addition to the defendant's criminal record, 'any other evidence of an extraneous crime . . . that is shown beyond a reasonable doubt by evidence to have been committed by the defendant . . . regardless of whether he has previously been . . . finally convicted of the crime . . . .'" *Davis v. State*, 968 S.W.2d 368, 372 (Tex. Crim. App. 1998). "This is a clear expression of legislative intent that the fact-finder have, in addition to judicial records, any other evidence of a defendant's crimes, regardless of whether the defendant has been convicted. This language certainly includes other evidence of crimes to which a defendant had pled guilty or nolo contendere and for which the defendant had received deferred adjudication community supervision." *Id.*

by the State.  Between the order, the stipulation of evidence, and the comments on the docket sheet, it is reasonable to conclude that the 1980 trial court found the evidence substantiated Haley's guilt.

There was no error in the trial court's admission of the 1980 deferred adjudication at Haley's punishment proceeding.  We overrule Haley's third point of error and affirm the trial court's judgment.

Jack Carter
Justice

Date Submitted:     July 31, 2009
Date Decided:       August 13, 2009

Do Not Publish